IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| BILLY FRANK HALE, ) | |
| TDCJ No. 693364, ) | |
|       Plaintiff, ) | |
| ) | Civil No. 7:07-CV-115-O |
| v. ) | |
| ) | |
| EDDIE C. WILLIAMS, *et al.*, ) | |
|       Defendants. ) | |

MEMORANDUM OPINION AND ORDER

Came on this day to be considered *Defendant Leann Pena's Motion for Summary Judgment* (Doc. No. 64), her *Brief in Support* (Doc. No. 65), *Plaintiff's Response and Objections to Defendant's Motion for Summary Judgment* (Doc. No. 66) and *Plaintiff's Affidavit in Support of his Response* (Doc. No. 67) and the Court finds and orders as follows:

This is an action brought pursuant to 42 U.S.C. § 1983 by an inmate confined in the James V. Allred Unit of the Texas Department of Criminal Justice ("TDCJ") in Iowa Park, Texas. Defendant Pena was an employee of the TDCJ at the time of the events giving rise to this lawsuit. *Amended Complaint ¶ IV.B.*

Pursuant to Plaintiff's request and by Order entered February 26, 2009, Defendants Lisa S. James and David B. Ritchie were dismissed as parties to this action. (Doc. No. 26). By order entered April 7, 2009, Plaintiff's claims against Defendants Eddie C. Williams, James D. Anders and Tommy Norwood were dismissed. (Doc. No. 38). Leann S. Pena is the only Defendant remaining in this action.

Plaintiff alleges that, after enduring a year and a half of harassment from Defendant Pena, his craft shop privileges were revoked by Pena for the purpose of retaliation because he had complained to prison authorities about the harassment.

A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995); *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986). In order to show retaliation an inmate "must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods*, 60 F.3d at 1166). This places a significant burden on the inmate. Mere conclusory allegations are insufficient to state a claim. *Woods*, 60 F.3d at 1166; *Richardson v. McDonnell,* 841 F.2d 120, 122-23 (5th Cir. 1988). The inmate must produce direct evidence of motivation or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166 (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Plaintiff alleges that, in June 2005, Defendant Pena tried to persuade him to make a special deal for her friend, the warden's secretary, and sell her a purse he made in the craft shop for $45.00 which was less than his asking price of $85.00. Plaintiff claims that, as a result of his refusal to reduce the price of the purse, Pena began harassing him. *Plaintiff's Answer to the Court's Question No.1 (Doc. No. 15).* Plaintiff claims that, in September 2005, Defendant Pena tried to force him to

provide information related to suspected wrongdoing by another inmate. *Amended Complaint, Attachment at p. 3E.* Plaintiff states that Pena threatened to remove him from the craft shop if he refused to provide the information she wanted about the other inmate. *Id.* However, Plaintiff claims that he refused to cooperate with Pena. *Id.*

On January 2, 2007, Pena allegedly removed Plaintiff's craft shop property from his locker and threw it on the floor. *Id. at 3F.* Plaintiff states that Pena began talking loudly to Plaintiff and threatening him in an effort "to force [Plaintiff] to say something out of line" so that she would have a reason to terminate his craft shop privilege. *Id.* Pena then began nit-picking and badgering Plaintiff "on and on." *Id.* Pena then ordered Plaintiff to throw away some of his leather patterns because he had more than allowed. *Id.* Plaintiff states that he asked Pena why she targets White men, but not Black or Hispanic inmates. *Id.* At this point, Pena allegedly told Plaintiff to shut-up, which he did. *Id.* Plaintiff threw away the excess patterns as directed. *Id.* He complains that Pena left the craft shop without picking up his property that she threw on the floor. *Id.* He also complains that this was "the third time in recent months" that Pena had shaken down his locker. *Id.*

On January 2, 2007, before leaving the craft shop, Pena allegedly confiscated Plaintiff's hot pot and other personal property, but failed to give Plaintiff a receipt. *Id.* Plaintiff states that, after this incident, he wrote a letter to Senior Warden Eddie C. Williams complaining of harassment by Pena. On March 1, 2007, Plaintiff was escorted to see Captain Anders. *Id. at 3G.* While waiting for Anders, Pena allegedly saw Plaintiff and began questioning him about who he was there to see. *Id.* Plaintiff told Pena that a captain had sent for him and Pena responded, "I'll see." *Id.* Plaintiff

was then taken to see Captain Anders with whom he discussed the alleged incidents of harassment by Pena. *Id.* Plaintiff claims that Captain Anders said he would look into the matter. *Id.*

Plaintiff states that his craft shop privileges were terminated by Pena on March 15, 2007. *Id.* Pena allegedly confiscated all of Plaintiff's craft shop materials but failed to provide him with a confiscation receipt. *Id.* Plaintiff states that, on June 4, 2007, Pena tried to force him to sign a disposition form for his craft shop property. *Id. at 3H.* However, he refused to sign because his appeal of the matter was still pending. *Id.* Pena allegedly informed Plaintiff that if he did not sign the disposition form, she would destroy his property. *Id.* Plaintiff claims that Pena terminated his craft shop privileges for purposes of retaliation because he complained to Warden Williams about her alleged behavior. *Plaintiff's Answer to the Court's Question No.1 (Doc. No. 15).*

Defendant Pena argues that Plaintiff's craft shop privileges were not revoked for purposes of retaliation. Rather, she claims that Plaintiff's craft shop privileges were revoked, along with others after review of the participant list, because he was one of the least productive "piddlers" and there were other inmates waiting for craft shop privileges. *Defendant's Brief in Support of Motion for Summary Judgement at p. 2. (hereinafter "Defendant's Brief at p. ___ .")* Pena argues that she was unaware of Hale's complaint about her and that Hale was removed from the craft shop by Warden Williams, not by her. *Id. at p. 2.* She further claims entitlement to qualified immunity from suit. *Id. at pp. 7-8.*

The summary judgment evidence submitted by Defendant Pena reflects that inmates are periodically cut from the list of craft shop eligibility by the warden for different reasons. *Defendant's Brief, Appendix at p. 1.* One reason for removing an inmate from the craft shop is when

his productivity is low when compared to other inmates utilizing the craft shop. *Id. at pp. 1-2.* In his affidavit, Warden Williams states that he removed Hale from the craft shop due to low productivity and so that other inmates could have an opportunity to use the craft shop. *Id. at p. 2.*

In her affidavit, Defendant Pena states that, in early 2007, when the craft shop was moved to another building, she presented the warden with craft shop folders of several inmates who had not been active participants in the craft shop. *Id. at p. 3.* Plaintiff's folder was included because he maintained a "very small balance" when compared to other inmates utilizing the craft shop. *Id.* As Hale admits, he refused to sign the craft shop property inventory offered by Pena. *Id.; Amended Complaint, Attachment at p. 3H.* Pena further states that, at the time Hale was removed from the craft shop list, she was not aware of his complaint to Captain Anders or to anyone else. *Defendant's Brief, Appendix at p. 4.* Plaintiff's statement corroborates this fact in that he did not tell Defendant Pena who he was there to see or why when Pena allegedly confronted him when he was called to speak with Captain Anders on March 1, 2007. *Amended Complaint, Attachment at p. 3G.* There is no other indication in the record of this case that Pena knew of Plaintiff's complaint to Captain Anders. Plaintiff's mere suspicion of this fact is insufficient to overcome Defendant's summary judgment evidence. Moreover, Plaintiff himself has stated that Pena was trying to have him removed from the craft shop long before he complained to Captain Anders. *Amended Complaint, Attachment at pp. 3E & 3F.* Because use of the craft shop is a privilege, there is nothing constitutionally infirm about terminating an inmate's access. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995) (holding that a prisoner's liberty interest is "generally limited to

freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

Plaintiff has failed to establish that Defendant Pena's action in turning his folder over to Warden Williams for review of his craft shop privileges was a retaliatory act. To support a retaliation claim, Hale is required to either produce direct evidence of retaliatory motivation or show a chronology of events from which retaliation may plausibly be inferred. He has not met this burden. There is no direct evidence of Pena's motivations and Plaintiff has not shown that an inherently suspect chronology of events exists to support his retaliation claim. At best, Plaintiff has shown that he and Pena had differences over a period of a year and a half. There is no indication that Plaintiff's complaints against Pena resulted in any disciplinary action against Pena such that she would be so angry as to retaliate against him by having him kicked out of the craft shop. An inmate cannot convert action on the part of a prison official in removing a privilege into a constitutional violation by making a conclusory allegation of retaliation. *See Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing conclusory allegations that prison official's action was taken for retaliatory purposes because of prior complaints by the inmate). In short, Plaintiff has failed to demonstrate that, but for his complaint against Pena, he would not have been removed from the craft shop.

The Court further finds that Defendant Pena is entitled to qualified immunity from suit. The merits of Plaintiff's retaliation claim have been addressed herein because his allegations are inextricably intertwined with a key issue necessary to resolve the question of qualified immunity - i.e. whether there was a violation of a constitutional right. *See Gibson v. Rich*, 44 F.3d 274, 277 (5th

Cir. 1995) (holding government officials are entitled to qualified immunity from suit when performing discretionary functions unless their conduct violated statutory or constitutional rights, clearly established at the time of the alleged incident, of which a reasonable person would have known). It is clear from the facts of this case, viewed in a light most favorable to Plaintiff, that Defendant Pena's actions did not give rise to any issue of constitutional magnitude.

Summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law provides that an issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this

burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, "the [court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The movant's motion for summary judgment

will be granted if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56(e)(2).

The summary judgment evidence presented in the instant case establishes that there are no genuine issues of material fact and that Defendant Pena is entitled to summary judgment as a matter of law.

For the foregoing reasons, it is ORDERED that *Defendant Leann Pena's Motion for Summary Judgment* is GRANTED. Plaintiff's complaint is hereby dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous.

The Clerk of Court shall transmit copies of this order to Plaintiff and to Counsel for Defendants.

SO ORDERED this 22nd day of January, 2010.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**